IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| PAUL EUGENE RIGGINS, | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | } Civil Action No.: 5:13-CV-01472-RDP |
| | } |
| CAROLYN W. COLVIN, | } |
| Acting Commissioner of Social Security, | } |
| | } |
| Defendant. | } |

## MEMORANDUM OF DECISION

Plaintiff Paul Riggins brings this action pursuant to Title II of Section 205(g) and Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. §§ 405(g) and 1383(c).  Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

### I.    Proceedings Below

Plaintiff filed for disability, DIB, and SSI on April 23, 2012,[1] and alleged an onset date of disability of January 1, 2008.[2]  (Tr. 17, 230).  Plaintiff's applications were denied on June 28, 2012. (Tr. 156-160, 230). Plaintiff then requested (Tr. 166-167), and received a hearing before Administrative Law Judge William F. Taylor ("ALJ") on March 11, 2013. (Tr. 70-85). In his

---

[1] Plaintiff previously filed Title II and Title XVI applications on December 8, 2008. Plaintiff's applications were denied by the Appeals Council and are now pending at the district court level. (Tr. 17).

[2] Plaintiff originally claimed June 1, 2008 (Tr. 17) as the onset date of his current disability, but amended the date to October 19, 2011. (Tr. 228).

decision dated March 29, 2013, the ALJ determined that Plaintiff was not disabled under Section 1614(a)(3)(A) of the Act since October 19, 2011, Plaintiff's amended onset date of disability. (Tr. 228). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision (Tr. 1-4), that decision became the final decision of the Commissioner and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was forty-five (45) years old and had a seventh grade special education. (Tr. 24). Plaintiff suffers from cervical degenerative disc disease, third degree burns, Chronic Obstructive Pulmonary Disease ("COPD"), anxiety, depression, and Paranoid Schizophrenia. (Tr. 242).

With regard to his domestic life, Plaintiff reported his daily routine includes going outside three to four times each day to sit on the porch, stands outside, but for no more than fifteen minutes, sits in a chair, and then heads inside to lie on the couch. (Tr. 259, 261-262). Plaintiff also reported he goes to the store, but can only shop for five minutes because he cannot tolerate being around people. (Tr. 262). Plaintiff claims he mows the lawn, which takes three to four hours, and prepares meals for himself. (Tr. 261). When asked about his hobbies, Plaintiff reported he watches television all day and "plays ball." (Tr. 263). Plaintiff wears glasses because his left eye "goes where it wants" and he often closes it to avoid seeing double. (Tr. 265). Plaintiff has been prescribed several medications -- including Prozac, sleeping pills, and Neurontin -- but states he cannot afford the medicines. (Tr. 79).

Plaintiff has past relevant work as a tractor-trailer truck driver. That job required medium demands. A tractor-trailer truck driver position is considered to be a semi-skilled job. (Tr. 76). Plaintiff has not worked in that field in several years due to his COPD, neck and back pain, and because he continuously "falls out of his truck." (Tr. 75).

Prior to his alleged period of disability, in 2005, Plaintiff had surgery on his spine performed by Dr. Joel D. Pickett. On October 30, 2006, Dr. Pickett examined Plaintiff because he had been experiencing back, hip, and leg pain for six weeks. (Tr. 326). Dr. Pickett found mild degenerative changes at L5-S1, but no evidence of nerve root compression. (Tr. 329). Dr. Pickett noted that Plaintiff's condition did not require surgery, and recommended he go to physical therapy three times each week, for four weeks. (Tr. 330). The record shows Plaintiff has not seen Dr. Pickett since 2006. (Tr. 403). In order to control his pain, Plaintiff was seen at the Central North Alabama Health Services in Huntsville, Alabama, where he was prescribed 5mg of Lortab, twice each day. (Tr. 403).

Plaintiff next presented to the Central North Alabama Health Services on October 11, 2011, complaining of headaches, vertigo, and muscle spasms. (Tr. 355). He was again prescribed pain medication. (Tr. 355). He returned on October 18, 2011, and again complained of headaches and neck pain. (Tr. 354). Plaintiff was prescribed Ativan, Flexeril, Ultram, and Mobic (Tr. 354).

The following day, October 19, 2011, the alleged onset date of Plaintiff's disability, Plaintiff was treated in the Intensive Care Unit at the Crestwood Medical Center in Huntsville and admitted due to an overdose of prescription drugs. (Tr. 363). Dr. Rodney Morris noted Plaintiff's family stated he was under a lot of stress and they were concerned he was trying to kill himself. Plaintiff denied suicidal intentions and said he suffered from an accidental overdose. (Tr. 363). Dr. Morris reported no hallucinations or delusions and no homicidal ideations. (Tr. 363). Plaintiff was diagnosed with depressive disorder, adjustment disorder, and severe psychological stressors. Dr. Morris's assessment was that this was a suicide attempt by overdosing on prescription medication. (Tr. 368).

On October 21, 2011, Plaintiff was examined by Dr. Roza B. Cieszkowski at the Crestwood Medical Center. Dr. Cieszkowski reported Plaintiff did overdose, "because he wasn't sure if he wanted to go on like this" finding him "hopeless and helpless." (Tr. 370). Plaintiff disclosed he previously tried to overdose on aspirin in 1991. (Tr. 370). Plaintiff was admitted to the Crestwood Behavioral Unit where he was given medication. (Tr. 372). Dr. Cieszkowski diagnosed Plaintiff with major depressive disorder, anxiety disorder, and assigned him a GAF score of fifty-five (55). (Tr. 371). However, Dr. Ciezkowski did report Plaintiff was improving and no longer had suicidal thoughts. (Tr. 372). Plaintiff was discharged on October 24, 2011. (Tr. 372).

On November 30, 2011 Plaintiff was seen at the Mental Health Center of Madison County. Plaintiff reported he was overwhelmed, unable to sleep, tearful, experiencing hallucinations, and felt worthless. (Tr. 387). Plaintiff disclosed his brother had been burned in a trailer, and he was left to fend for himself at fifteen years of age. (Tr. 387). Plaintiff's goal at this time was to function better and take care of himself. (Tr. 432).

On March 27, 2012 Plaintiff saw Dr. Alan Piha at the Mental Health Center of Madison County. (Tr. 378). Plaintiff stated he had improved in regard to depression, but hated getting out in public more than fifteen to twenty minutes. (Tr. 378). Plaintiff reported a lot of pain in his left side. (Tr. 378). Dr. Piha noted major depression and planned an extended visit to discuss medical options due to his weight and financial situation. (Tr. 421). Plaintiff continued to be evaluated and treated by the Mental Health Center of Madison County. (Tr. 418).

On June 19, 2012, Plaintiff was examined by Jon G. Rogers, Ph.D., consultatively on behalf of the Social Security Administration. (Tr. 395). Plaintiff reported to Dr. Rogers he had depressed mood, insomnia, feels worthless and hopeless, wants to be by himself, and

experienced fits of anger. Plaintiff complained of pain from past injuries (such as burns), degenerative disc disease, and COPD, and reported smoking two or more packs of cigarettes daily. (Tr. 395-396). Dr. Rogers found Plaintiff capable of functioning independently, but his daily activities below average. (Tr. 398). (Tr. 401). The doctor diagnosed Plaintiff with pain disorder associated with psychological factors, depressive disorder, anxiety disorder, COPD, and degenerative disc disorder. (Tr. 399). Dr. Rogers noted Plaintiff's ability to understand, remember, and carry out instructions of supervisors and co-workers would be severely impaired. (Tr. 401). Plaintiff was assigned a GAF score of fifty (50). (Tr. 399).

The following day, June 20, 2012, Plaintiff was examined by Dr. Sherry A. Lewis. (Tr. 402). Dr. Lewis noted Plaintiff's chief complaints were neck pain, anxiety, COPD, and his eyes. Plaintiff further stated that he could not keep a job for more than three to four months because he is easily upset. (Tr. 406). Dr. Lewis assessed Plaintiff as having cervical neck pain with radiculopathy, Strabismic Amblyopia, situational anxiety and depression, COPD, and morbid obesity. Her findings were that Plaintiff was capable of performing activities of work. (Tr. 409).

On June 20, 2012, State Agency Physician, Dr. Samuel D. Williams, reviewed the work of Drs. Lewis and Rogers. He reported Plaintiff needed to have a work schedule that was flexible and well-spaced. (Tr. 126). He further reported Plaintiff can sustain non-intense interaction with co-workers, supervisors, and the public. (Tr. 126).

Toward the end of Plaintiff's hearing, the ALJ posed a hypothetical question to the Vocational Expert ("VE"). (Tr. 82). The ALJ began by describing:

> An individual as one who is young with seven years of special education, ability to read, write, add, and subtract. This person has the ability to perform a range of light work with a sit/stand option, who can occasionally perform overhead lifting. This person cannot be working at unprotected heights, nor constantly use his upper left extremity. This person can have no exposure to fumes, odors,

>gasses, and must avoid extreme temperatures and heavy vibrations. (Tr. 82). The individual can perform simple, unskilled work, and the change in workplace, and interaction with others should be minimal.

(Tr. 82).

The ALJ asked the VE if there were any jobs in the State of Alabama and the United States for someone with the skill set as described. The VE suggested the light level unskilled jobs of product maker, packager, and product bagger. (Tr. 83). The ALJ then asked if any jobs existed where the lifting limitations were at the sedentary range. The VE suggested the sedentary jobs of table worker, inspector, and document scanner. (Tr. 84). Finally, the ALJ asked the VE if Plaintiff could perform any of the listed jobs if he possessed the limitations he described in his testimony at the hearing with the ALJ. The VE testified he would not be able to perform any of the jobs he had listed. (Tr. 84-85).

Based on the VE's testimony, Plaintiff testimony, and the entirety of the record, the ALJ determined that there exists a significant number of jobs in the State and national economy that Plaintiff could perform. (Tr. 17).

## II.     ALJ Decision

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the

6

claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. *Id.* If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 19, 2011. The ALJ determined, Plaintiff has a combination of severe impairments -- degenerative disc disease of the lumbar and cervical spine, obesity, an affective disorder, and an anxiety disorder -- which satisfies the second prong of the analysis as set forth in

20 C.F.R. §§ 404.1520(c) and 416.920(c). (Tr. 19-20). However, the ALJ found that all these impairments, individually or in combination, are insufficient to qualify Plaintiff for disability. (Tr. 20). With regard to the third prong, the ALJ determined that Plaintiff has not had an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 20).

An ALJ must also examine the claimant's ability to work despite impairments and a claimant must provide medical evidence to support statements of severity. The ALJ recognized Plaintiff's impairments, but when comparing the claimed severity of his pain to the testimony given, the ALJ determined the testimony was not fully credible. In the Function Report completed by Plaintiff in May 2012, he indicated no limitations in the area of personal care. Plaintiff prepares his own meals, mows the lawn, drives a car, shops in stores, and even lists "playing ball" as a hobby. (Tr. 21). The ALJ relied on medical evidence when determining the Plaintiff's situation had improved. The ALJ recognizes Plaintiff was over-weight, but nowhere in the medical records is there evidence this is a limiting factor in Plaintiff's ability to work. The ALJ noted that no treatment notes suggest that Plaintiff's condition significantly impacts his functional ability. (Tr. 22-23).

In the final steps of the analysis, the ALJ found Plaintiff unable to perform his past relevant work as a tractor-trailer truck driver. (Tr. 24). However, based on the hypothetical questions posed to the VE, the ALJ determined, taking into account Plaintiff's age, education, work experience, and RFC, that there are jobs that exist in significant numbers in the national economy that Plaintiff can performed. (Tr. 25).

**III.     Plaintiff's Argument for Reversal**

Plaintiff presents a single argument for reversal – the ALJ erred in rejecting the opinion of the SSA's own consultative psychologist.

**IV.     Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See Id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### V. Discussion

After careful review, the court concludes that the ALJ's determination that Plaintiff was not disabled beginning October 19, 2011 is supported by substantial medical evidence and the ALJ applied proper legal standards in reaching that decision. The court addresses Plaintiff's argument below.

#### A. The ALJ Did Not Err In Rejecting the Opinion of the Consultative Psychologist.

Dr. Rogers, the SSA's consultative psychologist, stated that "Mr. Riggins' ability to understand, remember, and carry out instructions and respond appropriately to supervision, co-workers, and work pressure in a work setting would be severely impaired." (Tr. 401). Plaintiff contends the ALJ failed to give proper weight to Dr. Rogers's opinion. (Pl.'s Mem. 8). Plaintiff alleges his impairments are more than moderate, and are, in fact, severe. (Pl's Mem. 9). Specifically, Plaintiff alleges that Dr. Rogers's findings are linked his psychological factors and general medical condition. (Pl's Mem. 9).

In the Eleventh Circuit case *Crawford v. Commissioner of Social Security,* the ALJ rejected the opinion of the consultative psychologist. 363 F.3d 1155, 1160 (11th Cir. 2004). The court ruled the ALJ gave proper weight to the consultative psychologist because the psychologist had only examined the claimant on one occasion. *Id.* As the court noted, it is well established that a doctor who examines a claimant only once is not a treating physician. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987); *see also Crawford,* 363 F.3d at 1160. In this case, Dr. Rogers only examined the Plaintiff on one occasion. As a non-treating physician, Dr. Rogers opinion is not entitled to controlling weight under 20 C.F.R. § 404.1527(c)(2). *Perdue v. Colvin*, No. 1:12-cv-2864-AKK, 2012 WL 3689771, at *4 (N.D. Al. 2014). The ALJ "may reject the opinion of any physician when the evidence supports a contrary conclusion." *Bloodwoth v.*

*Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983). Dr. Rogers gave Plaintiff a GAF score of 50. (Tr. 398-399). A GAF score of 50 is consistent with severe impairments; however, in this case, neither the medical evidence nor Dr. Rogers's own findings support such a score. *See* AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 34 (4th ed. Rev. 2000) (Comm'r 6). In fact, Dr. Rogers reported that Plaintiff is able to function independently (Tr. 388-389), a finding which itself appears inconsistent with such a low GAF score. In addition, although Plaintiff claimed that he engaged in no activities outside of the home (Tr. 79), he also testified that he goes to the store, mows the lawn, and plays ball. (Tr. 261-263). The ALJ relied on the record as a whole in making his findings and rejecting Dr. Rogers's opinion. The ALJ's finding are supported by substantial evidence in reaching his decision.

Finally, the Plaintiff contends the ALJ erred in stating there was no evidence that he had been seen at the mental health center since 2012. (Pl. Mem. 8). The Commissioner concedes this point but states it does not rise to the level of reversible error. The court agrees. The records after July 2012 do not differ from the records the ALJ relied upon in making his decision. That is, the records the ALJ reviewed and which were dated prior to July 2011 still support the decision to reject the opinion of Dr. Rogers. In *Diorio v. Heckler*, the ALJ improperly stated the claimant was approaching advanced age. 721 F.2d 726, 728 (11th Cir. 1983). The court ruled this to be a harmless error because it did not affect the outcome. *Id.* In the present case, the ALJ did state an incorrect fact, but the error was harmless because of the similarity of the records before and after July 2012. (*Compare* Tr. 419-422, 429, 432-433 *with* Tr. 378-390. 423-429, 430-431).

    **B.**    **The ALJ Did Not Err in Giving Great Weight to the Opinion Of The State Agency Physician**

Plaintiff's contention that the ALJ gave too much weight to Dr. Lewis's opinion lacks merit. (Pl. Mem. 9). Dr. Lewis' assessment that Plaintiff can perform activities of work is

consistent with the medical evidence of record in this case. Dr. Lewis's assessment that Plaintiff can work is consistent with the GAF score of 55 given him by Dr. Cieskowski upon his discharge on October 21, 2011. (Tr. 371). To the contrary, Dr. Rogers assessed Plaintiff with a GAF score of 50. (Tr. 399). The ALJ correctly rejected the opinion of Dr. Rogers, because his findings are inconsistent with the record as a whole. Dr. Cieskowski's assigned GAF score, which is supported by substantial evidence in the record, reflects only moderate impairments and further bolsters the opinion of Dr. Lewis when combined with the totality of evidence.

### C. The ALJ Did Not Err In Failing to Address The Physician's Recommendation

Plaintiff contends the ALJ erred in not providing the VE with all of his limitations, specifically his need for a flexible daily schedule and well-spaced work setting, (Pl. Mem. 9). The Commissioner counters that the opinion of Dr. Williams, the State Agency Medical Consultant, was given weight, but not controlling weight. (Comm'r Mem. 8, Tr. 24). The ALJ found Plaintiff has the ability to perform light work with a sit/stand option and thus rejected the flexible schedule and well-spaced work setting limitations. (Tr. 20). Those findings are supported by substantial evidence. Thus, as the Commissioner correctly noted, an ALJ's hypothetical need not include limitations that have already been rejected by the ALJ. *See Crawford v. Comm'r Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004). Therefore, the VE's responses to the ALJ's questions (Tr. 83-84) constitute substantial evidence that Plaintiff has the ability to perform several jobs available in the national economy. The decision of the ALJ is supported by substantial evidence, and therefore is to be affirmed. *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).

**D.     The ALJ Did Adequately Develop the Record**

Finally, Plaintiff contends the ALJ failed to fully develop the record. More specifically, Plaintiff argues that the ALJ had a duty to obtain a CE or a medical source opinion. (Pl. Mem. 10). Although an ALJ has a duty to develop a full and fair record (Comm'r. Mem. 8); *see Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), the court agrees with the Commissioner that such a duty is cabined by the requirement that there be a sufficiently full and complete record that will provide the ALJ with adequate information to make an informed decision. *See Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). That is, where there is a full and complete record -- and that is the case here -- there is no duty to further develop that record. The ALJ examined the reports of multiple physicians, and had before him a record with extensive medical reports pertaining to Plaintiff's condition. (Tr. 324-433). He more than adequately developed the record.

**VI.     Conclusion**

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this August 19, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE